IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MANUEL HERNANDEZ, | |
|---|---|
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 18-02912 |
| CYNTHIA LINK, *et al.*, | |
| *Defendants.* | |

**PAPPERT, J.**  February 26, 2019

**MEMORANDUM**

While an inmate at SCI Graterford, *pro se* litigant Manuel Hernandez suffered a hand injury during a procedure performed by an unnamed nurse at Wills Eye Hospital. Hernandez had been sent to Wills to receive treatment for glaucoma in his right eye. Hernandez claims that when he returned to prison, he received inadequate medical care that caused permanent damage to his hand. He sued Correct Care Solutions, LLC, its employee Dr. Stephen Weiner, former Graterford Superintendent Cynthia Link and Graterford's former Correctional Health Care Administrator Joseph Korszniak for violating his rights under 42 U.S.C. § 1983, the United States Constitution and Pennsylvania state law. The Defendants filed Motions to Dismiss for failure to state a claim and failure to exhaust administrative remedies. *See* (ECF Nos. 12 and 21). The Court grants the Defendants' Motions, while allowing Hernandez an opportunity to file an amended complaint consistent with this Memorandum.

I

Manuel Hernandez is an inmate at the Pennsylvania State Correctional Institution at Graterford. (Compl., ECF No. 2.) Hernandez has been diagnosed with

1

glaucoma in his right eye and undergoes annual eye examinations at the prison. (*Id*. at 3.) On September 6, 2017, during Hernandez's exam, the prison optometrist determined that Hernandez needed to be transported to Wills Eye Hospital for treatment. (*Id*.) At Wills Eye, a nurse attempted to place an IV in Hernandez's right hand but was unable to insert the needle, causing him pain and discomfort. (*Id*.)

After returning to SCI Graterford, Hernandez told a nurse about the incident and that his hand was still bothering him. (*Id*. at 4.) Hernandez alleges that the nurse "waived him off" and told him to return to his cell. (*Id*.) Hernandez's hand continued to swell. (*Id*.) On September 11, 2017, Hernandez visited the prison dispensary and asked to have someone look at his hand. (*Id*.) The nurse instructed Hernandez to sign up for sick call and return the next day to be evaluated by a physician. (*Id*.)

On September 12, 2017, Hernandez was seen by Dr. Stephen Weiner and admitted to the prison infirmary. (*Id*.) Dr. Weiner gave Hernandez steroids and ordered pain medication for Hernandez but otherwise determined that no further treatment was necessary. (*Id*.) Hernandez was released from the infirmary on September 14, 2017. (*Id*.) He continued to experience pain, swelling, stiffness and discoloration in his right hand. (*Id*.)

On September 14, Hernandez filed a two-page grievance related to issues stemming from his hand. (*Id*. at 5–6.) The facility grievance coordinator assigned the grievance to Corrections Health Care Administrator Korszniak on September 22, 2017. (*Id*. at 4.) Korszniak denied Hernandez's grievance one week later, stating that there was no order for a follow-up and instructed Hernandez to go to sick call if the issue persisted. *See* (*id*.; Grievance No. 698071 at 2, ECF No. 12-1.) At some point

thereafter, Hernandez went to sick call for an evaluation where a "Practitioner" told him that he has nerve damage in his hand. (Compl. at 4.)

Hernandez appealed the denial of his initial grievance to Superintendent Link. (*Id.*) On November 21, 2017, after roughly two months, Link upheld Korszniak's determination and again advised Hernandez to attend sick call. (Appeal Response, ECF No. 12-2 at 1.) Hernandez made two attempts to appeal Link's response for final review. (Compl. at 4.) On January 3, 2018, Hernandez's first appeal was returned because he failed to attach required copies. (Appeal Response at 2.) His second appeal was returned on February 1, 2018 because it was not legible. (*Id.* at 3.)

Hernandez filed his *pro se* Complaint on July 11, 2018 against Link, Korszniak and Weiner, as well as a Jane Doe nurse and a "Correct Care Solutions Contracted Optometrist," whom the Court interprets to mean Correct Care Solutions, LLC. (*Id.* at 2.) He asserts a number of claims that the Court interprets liberally to include deliberate indifference to serious medical needs in violation of the Eighth Amendment, violations of 42 U.S.C § 1983, a substantive due process claim and Pennsylvania state law claims for medical malpractice, negligence and gross negligence. (Compl. at 3–4.) The Defendants move to dismiss all claims against them. (ECF Nos. 12 and 21.)

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

B

Because Hernandez is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d

4

244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). At the same time, *pro se* litigants "must allege sufficient facts in their complaints to support a claim . . . At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III

To establish a *prima facie* case under § 1983, Hernandez must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Hernandez must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. Cal.*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). "More particularly, the plaintiff must allege that the defendant was personally involved in the deprivation." *Johnson v. Derose*, 349 F. App'x 679, 681 (3d Cir. 2009).

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a

5

prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

A

Hernandez does not specify whether he is suing Link or Korszniak in their official or individual capacities. Since Hernandez is *pro se*, the Court will assume that he is suing them in both capacities. Claims against state officials in their official capacities are just another way of pleading an action against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment provides that each state is a sovereign entity and a sovereign is not amenable to suit unless it consents. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Pennsylvania has expressly withheld its consent to be sued. *See Lavia v. Pa., Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Accordingly, all claims against Link or Korszniak in their official capacities are suits against the state and are barred by the Eleventh Amendment.

B

Although the Eleventh Amendment bars suits against state officials in their official capacities, it does not prevent state officials from being sued in their individual

6

capacities. *See West v. Keve*, 571 F.2d 158, 163 (3d Cir. 1978). "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In a § 1983 action, a plaintiff must show the defendants' personal involvement by alleging personal direction, actual knowledge, or acquiescence. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

i

Hernandez alleges that prison officials Link and Korszniak were deliberately indifferent to his serious hand injury. Medical and non-medical prison officials are held to different standards within the context of deliberate indifference claims. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). A prison official acts with deliberate indifference to a serious medical need "when he knows of and disregards an excessive risk to inmate health or safety." *Brown v. Thomas*, 172 F. App'x 446, 450 (3d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference is also satisfied "where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care." *Spruill*, 372 F.3d at 235.

However, correctional defendant-administrators who are not themselves physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "[A]s a general matter the [Third Circuit] has been reluctant to assign liability to prison officials based solely on the denial of prisoner grievances." *Carter v. Smith*, CIV.A 08–

7

279, 2009 WL 3088428, at *5 (E.D.Pa. Sept. 22, 2009). Even if a prison official's review were to constitute personal involvement, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236. This is because "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id*.

Here, Hernandez fails to state a claim of deliberate indifference against non-medical defendants Korszniak and Link. Hernandez does not allege that either of them were personally aware of, or directly involved with, the allegedly inadequate medical care. Instead, Hernandez alleges that they merely reviewed his grievance and deferred judgment to the medical personnel. Hernandez acknowledges that both officials recommended he visit medical if his problems persisted.

ii

Hernandez also alleges that Dr. Weiner was deliberately indifferent to his hand injury. Medical authorities are typically provided "considerable latitude" in the diagnosis and treatment of inmate patients when made with informed judgment. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Claims of medical malpractice and disagreements as to the proper course of medical treatment do not satisfy the deliberate indifference standard. *See Monmouth Cty.*, 834 F.2d at 346; *see White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate

8

indifference"). Moreover, "inadvertent failure to provide adequate medical care," or "that a physician has been negligent in diagnosing or treating a medical condition" does not constitute deliberate indifference. *Estelle*, 429 U.S. at 106. Such failures are "[a]t most medical malpractice" and while they may be cognizable under state tort law, they are not Eighth Amendment violations. *Id.* at 107.

Here, Hernandez does not claim that Dr. Weiner denied or intentionally withheld medical treatment from Hernandez. Instead, he states that he received medical treatment from Dr. Weiner for his hand, including pain medication. Hernandez's dissatisfaction with the level of treatment received and type of medication prescribed by Dr. Weiner is not the basis for a constitutional claim under the Eighth Amendment. *See id.* at 106.

### iii

Hernandez also appears to allege that the individual defendants should be held liable under a supervisory theory of liability. To hold a supervisor liable for an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the defendant supervisor failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1117 (3d Cir. 1989)).

Hernandez has not pled any facts to support supervisory liability.  He conclusorily states that discovery will show that Dr. Weiner "had the authority to provide Plaintiff with the treatment needed to treat his right hand and/or to have someone under their authority to provide that treatment to Plaintiff's right hand and failed to do so after being informed about the injury caused by Wills Eye[.]" (Resp. Opp'n Mot. Dismiss ¶ 21, ECF No. 24.)  He also claims that:

> Link and Korszniak had the authority to provide Plaintiff medical treatment or to have someone under their authority to provide Plaintiff the needed medical treatment required from 9/6/2017 throughout 2/1/2018 and neither one exercised that power nor remanded the grievances or appeal to Weiner, CCS, Wills Eye or Doe(s) throughout 2/1/2018 or anyone else under their authority to physically examine and/or to provide the needed medical treatment to treat Plaintiff's right hand.

(*Id*. at ¶ 20.)  Such conclusory allegations are insufficient to state a supervisory liability claim under the Eighth Amendment.

C

Hernandez also alleges that Correct Care Solutions, LLC was responsible for providing healthcare to the prisoners at SCI Graterford.  (Resp. Opp'n Mot. Dismiss at 10, ECF No. 25.)  He contends that CCS "had the authority to provide Plaintiff with the treatment needed to treat his right hand and/or to have someone under their authority to provide that treatment to Plaintiff's right hand and failed to do[.]"  (Resp. Opp'n Mot. Dismiss ¶ 21, ECF No. 24.)  Construing his claim liberally, the Court analyzes this allegation under the standard for municipal liability set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  *See* (Resp. Opp'n Mot. Dismiss at 14, ECF No. 25) (citing *Monell*, 436 U.S. at 658).

10

Generally, a municipality or a private entity performing a municipal function will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a private entity can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658).

Accordingly, a successful claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the private entity and (3) that the constitutional violation was caused by the private entity's policy or custom. *See id.* A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). A custom must be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Hernandez fails to state a claim against CCS under the *Monell* theory of liability. He does not identify any CCS policies, practices or customs that could have resulted in the constitutional violations of which he complains. Moreover, Hernandez fails to allege any conduct attributable to a policymaker. *See McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009) (finding the allegations deficient "[b]ecause [the appellant] does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker").

IV

In his response to one of the Motions to Dismiss, Hernandez suggests that he is also bringing a substantive due process claim. *See* (Resp. Opp'n Mot. Dismiss ¶ 24(1)(a), ECF No. 25) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386 (1989)). Because Hernandez's allegations against the defendants for deliberate indifference to provide adequate medical care fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, the more-specific-provision rule forecloses Hernandez's substantive due process claims. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010).[1]

V

Hernandez also asserts state law claims of malpractice, negligence and gross negligence. Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once all claims over which the Court has original jurisdiction have been dismissed. In such a situation, it is appropriate to refrain from exercising jurisdiction over the state law claims "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d

---

[1] Given the dismissal of Hernandez's Complaint for failure to state a claim, the Court need not address CCS and Weiner's argument that the Complaint should be dismissed because Hernandez failed to exhaust his administrative remedies.

12

187, 196 (3d Cir. 1967). With the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over Hernandez's state law claims.[2]

VI

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). The Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), a plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the plaintiff has not moved to amend the complaint. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Hernandez will be allowed to amend his Complaint consistent with the reasoning in this Memorandum and as specified in the attached Order.

An appropriate Order follows.

---

[2] Furthermore, all state law claims against Link and Korszniak are barred by the doctrine of sovereign immunity. The Commonwealth has sovereign immunity from state law claims and has extended that immunity to its employees acting within the scope of their employment, *see* 1 Pa. C.S. § 2310, with limited exceptions, *see* 42 Pa. C.S. § 8522. Because Link and Korszniak were "acting with the scope of their duties," *Maute v. Frank*, 441 Pa.Super. 401, 657 A.2d 985, 986 (1995), and none of the exceptions apply, Link and Korszniak are immune from these claims.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.