IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANUEL HERNANDEZ,<br><br>       *Plaintiff*,<br><br>v.<br><br>CYNTHIA LINK, *et al.*,<br><br>       *Defendants*. | CIVIL ACTION<br>NO. 18-02912 |

**PAPPERT, J.**                                                                                                                                                                                                                                     December 20, 2019

## **MEMORANDUM**

While incarcerated, Manuel Hernandez was sent to Wills Eye Hospital for treatment for his glaucoma. At the hospital, an unnamed nurse injured Hernandez's hand during a procedure. When he returned to prison, Hernandez allegedly received inadequate medical care, which permanently damaged his hand. Hernandez sued various prison officials and medical providers. Two pairs of those defendants moved to dismiss Hernandez's claims. The Court grants both Motions.

I

During the relevant events, Hernandez was an inmate at the Pennsylvania State Correctional Institutional at Graterford. *See* (Am. Compl. p. 4 ¶ 1, ECF No. 46).[1] At that time, Cynthia Link was Graterford's Superintendent. *See* (*id.* at p. 4 ¶ 2). Joseph Korszniak, a former registered nurse, also worked there as a Health Care Administrator. *See* (*id.*) In that role, Korszniak oversaw the prison's contracts with

---

[1] After paragraph ten, Hernandez's Amended Complaint restarts the paragraph numbering at one and continues to forty. When citing to material from a paragraph numbered one to ten, the Court includes both the page and paragraph numbers.

1

medical providers and was responsible for ensuring compliance with those contracts. *See* (*id.* at ¶ 25). Correct Care Solutions, LLC was one such contractor that provided SCI-Graterford's inmates with medical care. *See* (*id.* at p. 5 ¶ 4). Dr. Stephen Weiner was a physician with Correct Care. *See* (*id.*)

While incarcerated at SCI-Graterford, Hernandez was diagnosed with glaucoma. *See* (*id.* at p. 7 ¶ 1). Months later, Korszniak, Link, Correct Care and Weiner allegedly ordered that Hernandez be transported to Wills Eye Hospital "for emergency treatment [for] his glaucoma." (*Id.* at p. 7 ¶ 4.) At Wills, an unnamed nurse clumsily inserted an IV in Hernandez's right hand, causing unnecessary pain, bleeding and swelling. *See* (*id.* at pp. 7–8 ¶ 5–8). Despite Hernandez's swollen, bloody hand, the nurse and an unnamed doctor sent Hernandez back to SCI-Graterford without treatment. *See* (*id.* at p. 8 ¶¶ 9–10).

Hernandez told an unnamed prison nurse about his hand injuries, but the nurse ignored the injuries without providing any treatment. *See* (*id.* at ¶¶ 11–12). Six days later, Weiner examined Hernandez's hand and prescribed steroids "to help with the swelling, discolor and pain." (*Id.* at ¶ 17.) After two days, Weiner discharged Hernandez from the infirmary with a supply of pain killers. *See* (*id.* at ¶ 18). Neither the steroids nor the pain killers helped; the swelling and pain persisted. *See* (*id.* at ¶ 19).

Hernandez later filed a grievance with the prison alleging that he had received inadequate medical care and remained in need of proper treatment. *See* (*id.* at ¶ 20). Korszniak denied the grievance and directed Hernandez "to go to sick call and be evaluated." (*Id.* at ¶ 22.) Following Korszniak's instructions, Hernandez went to sick

call, where a nurse practitioner diagnosed him "with nerve damage to his fingers" but provided no treatment. (*Id.* at ¶ 23.)

Hernandez appealed the denial of his grievance to Link, who allegedly had the authority to direct Korszniak, Weiner and Correct Care to provide Hernandez immediate medical treatment. *See* (*id.* at ¶ 26). Link, however, did not do so; instead, she denied Hernandez's appeal two months later and told "him to go to sick call." (*Id.* at ¶ 27.) Although Hernandez twice tried to appeal Link's decision, each attempt was rejected for noncompliance with grievance procedures. *See* (*id.* at ¶ 28).

A few months later, Hernandez (acting *pro se*) sued Link, Korszniak, Weiner and Correct Care, among others. *See* (Compl., ECF No. 1). After the Court dismissed his complaint—some claims with prejudice, others without—Hernandez filed an Amended Complaint. *See* (Am. Compl.).

The Amended Complaint states four counts, all seeking to vindicate federal rights via 42 U.S.C. § 1983.[2] Count I asserts Eighth Amendment claims of deliberate indifference against Link, Korszniak, Weiner and Correct Care. *See* (*id.* at 7–8 ¶¶ 1–9). In Count II, Hernandez reiterates and adds to his deliberate-indifference claim against Weiner. *See* (*id.* at ¶¶ 17–19). Count III does the same for the deliberate-indifference claims against Korszniak and Link. *See* (*id.* at ¶¶ 20–28). And Count IV adds claims that the defendants' "collective actions violated [Hernandez's] First, Eighth, Ninth and Fourteenth Amendment rights," as well as the Department of Corrections' "Access to Health Care Procedure Manual 13.1; the Universal Declaration of Human Rights;

---

[2] Hernandez has clarified that he is not bringing any state-law claims. *See* (Resp. to Wills Letter ¶ 32, ECF No. 58). He does, however, assert other federal claims against unnamed defendants or defendants who have not moved to dismiss. *See, e.g.*, (Am. Compl. ¶ 32). The Court addresses only those claims relevant to the moving defendants' motions.

3

Treatment of Prisoners Laws; . . . the Patient Informed Consent Act; [and] HIPPA Laws." (*Id.* at ¶¶ 33–34.) Link, Korszniak, Weiner and Correct Care move to dismiss all claims against them.

II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

Because Hernandez appears *pro se*, the Court must construe his pleadings liberally. *See Pearson v. Sec't Dep't of Corrs.*, 775 F.3d 598, 604 (3d Cir. 2015). This

4

leniency "means that [courts] are willing to apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Incarcerated *pro se* litigants enjoy additional flexibility because they "often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Id.* at 244–45. That said, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" and "abide by the same rules that apply to all other litigants." *Id.* at 245.

III

Section 1983 "does not confer any substantive rights." *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017). Rather, it is "a method for vindicating federal rights elsewhere conferred." *Id.* (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). Under § 1983, a plaintiff must prove "that a person acting under color of law deprived him of a federal right." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). A plaintiff must also show that each defendant participated in or had actual knowledge of and acquiesced in the wrongful conduct. *See Chavarriaga v. New Jersey Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).

To state a claim for supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor failed to adhere to a "specific supervisory practice or procedure"; (2) without that specific practice or procedure, "the existing custom and practice . . . created an unreasonable risk of the ultimate injury"; (3) the supervisor knew "that this unreasonable risk existed"; (4) "the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Id.* at 227 (quotation omitted). In other words, the plaintiff

5

"must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

A plaintiff may pursue a § 1983 claim against a municipality or entity acting under color of law under one of two theories. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The first option is to allege "that an unconstitutional policy or custom of the municipality led to . . . her injuries." *Id.* The second option is to show that "a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice'" caused the plaintiff's injuries. *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

A

Prison officials violate the Eighth Amendment if they are deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate-indifference claim ordinarily has "both an objective and a subjective showing." *Chavarriaga*, 806 F.3d at 226. The objective component requires proof "that the deprivation was 'sufficiently serious' . . . that it reached the level of an Eighth Amendment violation." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The subjective component involves showing that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and in fact drew that inference. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994)). When the prisoner alleges a delay or denial of medical treatment, he need not satisfy the objective component; he must show only that "the delay or denial was motivated by non-medical factors." *Id.* at 537.

1

Hernandez fails to state a claim for deliberate indifference against Link or Korszniak. Link and Korszniak were prison administrators, not members of the medical staff. *See* (Am. Compl. ¶¶ 21, 25–26). In that role, they were not responsible for personally providing Hernandez medical care.[3] *See* (*id.* at ¶¶ 25–28). Rather, as administrators, they reviewed and rejected Hernandez's grievance; those denials are the only specific conduct the Amended Complaint traces to Link and Korszniak. *See* (*id.* at ¶¶ 21–28). And in denying Hernandez's grievance, they each directed Hernandez to go to sick call to seek further treatment from the prison medical staff. *See* (*id.* at ¶¶ 22, 27). So rather than acquiesce in inadequate care, Link and Korszniak sent Hernandez for *additional* care. Simply put, Hernandez fails to allege that either Link or Korszniak personally participated or acquiesced in the alleged inadequate medical care. *Cf. Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding non-medical officials not deliberately indifferent for failing to respond to medical complaints by a prisoner who was already being treated by a prison doctor); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (unpublished) (holding that allegations that prison administrators inappropriately responded to grievances regarding medical treatment did not show administrators' personal involvement in the treatment itself").

Nor does Hernandez state a deliberate-indifference claim against Link or Korszniak based on a denial or delay of medical treatment. Again, the Amended Complaint does not accuse Link or Korszniak of personally delaying or denying care.

---

[3]  Hernandez seems to allege that Link and Korszniak—along with an unnamed corrections officer, Dr. Weiner, Correct Care and other unnamed defendants—directed him to report to the prison medical department for treatment and later had him transported to Wills for emergency treatment. *See* (Am. Compl. ¶¶ 2, 4). These allegations do not show that Link or Korszniak was personally involved or acquiesced in the unconstitutional deprivation, which occurred later.

After all, Hernandez admits that both administrators directed him to go to sick call for additional care. *See* (Am. Compl. ¶¶ 22, 27). The delays Hernandez complains about seem to be the general delays baked into the prison health system and unrelated to Link's or Korszniak's conduct. *See, e.g.*, (*id.* at ¶¶ 14–19). At most, Hernandez accuses Link of taking two months to reject his grievance appeal. *See* (*id.* at ¶ 27). He does not, however, allege that this delay caused an unconstitutional deprivation or that Link knowingly ignored a substantial risk of serious harm. *See* (*id.*) And although Hernandez occasionally accuses the defendants generally of denying and delaying medical care "as a means of saving money," (*id.* at 32), he does not say that this non-medical factor motivated any delay attributable to Link or Korszniak.

Hernandez's real claim against Link and Korszniak seems to be one of supervisor liability. *See* (Resp. to Link & Korszniak Mot. to Dismiss ¶¶ 2–4, ECF No. 60). Specifically, he alleges that they failed to direct the medical staff to provide him with "immediate, adequate and properly needed medical treatment." (Am. Compl. ¶ 25.) Yet, the Amended Complaint fails to "identify a specific policy or practice" that Link or Korszniak failed to employ. *Chavarriaga*, 806 F.3d at 227. To be sure, Hernandez accuses Link of disregarding "the timing for grievance appeals" by taking two months to deny the grievance appeal. (Am. Compl. ¶ 28.) But there are no facts suggesting that Link knew this delay posed a substantial risk of serious harm or that Link was indifferent to any such risk or that the delay cause a deprivation. Similarly, although Hernandez claims that the defendants' "collective actions violated the [Department of Corrections'] Access to Health Care Procedure Manual 13.1," (*id.* at ¶ 34), he never says how Link or Korszniak did so or whether this violation caused the

8

unlawful deprivation he complains of.  *Cf. Sims v. Wexford Health Servs.*, 635 F. App'x 16, 20 (3d Cir. 2015) (unpublished) (rejecting as conclusory allegations that prison policy was driven by financial concerns).  Without plausibly alleging these facts, Hernandez cannot state a claim for § 1983 supervisor liability.

2

The Amended Complaint also fails to state a claim for deliberate indifference against Dr. Weiner, who treated Hernandez's hand with steroids and pain medication.  *See* (Am. Compl. ¶¶ 17–18).  Absent evidence to the contrary, courts presume that the medical care that prisoners receive is proper.  *Pearson*, 850 F.3d at 535.  Nor can a prisoner state an Eighth Amendment claim by alleging facts showing medical malpractice or "mere disagreement as to the proper medical treatment."  *Id.*  But that is all the Amended Complaint accuses Weiner of—offering the wrong or not enough treatment for Hernandez's hand.  *See* (Am. Compl. ¶¶ 17–18).  Hernandez's belief that Weiner needed to do more or provide a different treatment, while perhaps justified, does not rise to the level of a constitutional violation.  *See Spruill*, 372 F.3d at 235.  Nor do Hernandez's conclusory assertions that Weiner—along with other defendants—denied or delayed treatment shield his deliberate-indifference claim from dismissal.  *See, e.g.*, (Am. Compl. ¶¶ 32); *cf. James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (reversing denial of motion to dismiss because district court relied on conclusory allegations).

3

As with the other moving defendants, Hernandez fails to state a deliberate-indifference claim, based on municipal liability, against Correct Care.  *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (applying municipal-

liability standard to a similar entity acting under state law).  The Amended Complaint does not allege that Correct Care maintained a policy or custom that caused the constitutional violation of which Hernandez complains.  Nor does it accuse a Correct Care policymaker of acting with deliberate indifference.  These omissions doom Hernandez's claim against Correct Care.  *Cf. McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009) (affirming dismissal of municipal-liability claim for these reasons).

B

Along with his Eighth Amendment claims, Hernandez alleges that the defendants collectively violated several other constitutional and other legal rights.  For example, the Amended Complaint states that the defendants violated Hernandez's "Ninth and Fourteenth Amendment rights." (Am. Compl. ¶ 33.)  Other than this one oblique reference, the Amended Complaint never again mentions the Ninth or Fourteenth Amendments.  Hernandez's bald assertion that the defendants collectively violated "the Universal Declaration of Human Rights[,] Treatment of Prisoners Laws . . . [,] the Patient Informed Consent Act," and the Heath Insurance Portability and Accountability Act" similarly leaves out essential details such as how these violations occurred.  (*Id.* at ¶ 34.)  He also says that the defendants violated his First Amendment right "to file grievances with those in power." (*Id.* at ¶ 20.)  Even if Hernandez has such a right, *compare Wisniewski v. Fisher*, 857 F.3d 152, 156–57 (3d Cir. 2017), *with Davis v. Samuels*, 608 F. App'x 46, 49 (3d Cir. 2015) (unpublished), he again offers no facts to support this conclusory claim.  Lacking these basic facts, the Court must dismiss each claim.

## IV

Even if the plaintiff does not request it, district courts must offer amendment in civil rights cases when dismissing a case for failure to state claim unless doing so "would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Court previously dismissed Hernandez's Eighth Amendment deliberate-indifference claims without prejudice and granted leave to amend. *See* (Order Dismissing First Compl. ¶ 1, ECF No. 38). Yet, the Amended Complaint recycled the same flaws that plagued the original complaint. Allowing Hernandez to amend his Eighth Amendment claims again would be futile, and it would be inequitable to force the moving plaintiffs to file a third round of motions to dismiss. *See St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 67 (3d Cir. 2009) (unpublished) (affirming dismissal with prejudice when *pro se* plaintiff had already been allowed to amend once). For those reasons, the Court dismisses with prejudice all Eighth Amendment deliberate-indifference claims against the moving defendants. The remaining claims, having been raised just once, are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.